UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6049-CR-DIMITROULEAS
MAGISTRATE JUDGE LYNCH

UNITED STATES OF AMERICA,

      Plaintiff,

v.

SAMUEL VELEZ, JR., and,
ANTHONY GARILLI,

      Defendants.

_____/



**GOVERNMENT'S OPPOSITION TO DEFENDANTS SAMUEL VELEZ, JR.'S AND ANTHONY GARILLI'S JOINT OMNIBUS PRETRIAL MOTIONS**

The United States of America, by and through its undersigned attorneys, hereby files its Opposition to Defendants Samuel Velez, Jr.'s and Anthony Garilli's Joint Omnibus Pretrial Motions. In support of its position, the Government states the following:

### FACTS

1. A federal grand jury in Ft. Lauderdale, Florida, returned an eight-count indictment against the defendants, Samuel Velez, Jr. ("Velez"), and Anthony Garilli ("Garilli") on March 2, 2000. The indictment charges Velez and Garilli under a number of counts. Specifically: Count One charges Velez and Garilli with conspiring to impede and impair the Internal



Revenue Service, in violation of Title 18, United States Code, Section 371; Counts 2 and 6, respectively, charge Velez with filing false 1993 and 1994 corporate income tax returns for Back to Back Enterprises of Florida, Inc., in violation of Title 26, United States Code, Section 7206(1); Velez is charged in Count 3 with filing a false 1993 corporate income tax return for Valencia Fitness, Inc., in violation of Section 7206(1); Velez is also charged in Counts 4 and 7, respectively, with filing false 1993 and 1994 individual income tax returns, in violation of Section 7206(1); Counts 5 and 8, respectively, charge Garilli with filing false 1993 and 1994 individual income tax returns, in violation of Section 7206(1).

2.   The trial of this case is set for the two-week trial calendar beginning on July 10, 2000.

3.   On March 20, 2000, Velez was arraigned. The discovery in this case was made available to Velez and his attorneys for inspection and copying during the week beginning March 20. Garilli's arraignment was held on March 27, 2000. The discovery with respect to Garilli and his counsel was made available for inspection and copying during the week beginning March 27.

4.   The discovery in this case consists of approximately seventy (70) boxes of documents. The bulk of the records were obtained pursuant to a search warrant executed at Gold's Gym, in

2

Ft. Lauderdale.   During status conferences held on April 4, and
again on April 11, 2000, defense counsel complained of the
burden associated with having to sift through all of the boxes
of discovery.   Counsel further complained that the Government
failed to provide them with an index to all of the documents in
its possession.[1]

5.   On April 21, 2000, the defendants were furnished copies
of all documents in the Government's possession which might be
utilized in its case-in-chief in an effort to assist them in
the upcoming trial of this case.   A detailed index of those
documents was also furnished to the defendants on April 24,
2000.

6.   To date, counsel has neither inspected nor requested
copies of the balance of the records that are not included in
the materials discussed in Paragraph 4 above.

### ARGUMENT

#### 1.   GENERAL DISCOVERY ISSUES

Velez and Garilli ("defendants") complain that the
Government failed to provide a "usable index" to approximately
60   boxes   of   discovery.   (Defendants'   Motion   at   3).
Notwithstanding   the   defendants'   complaint,   the   Government

---

[1]The Government furnished defense counsel with an index of
the records seized pursuant to the search warrant which covers
approximately 50 of the 70 boxes of documents.

3

furnished them with indices sufficient to serve as a guide to the documents seized from Gold's Gym as well as the ones to be used in the Government's case-in-chief. More important, the Government provided the defendants with copies of documents it may use in its case-in-chief. Despite the Government's standing offer to make available approximately 60 boxes of documents for inspection and/or copying (with the special agent's assistance), the defendants have not availed themselves of this opportunity to do so. Instead, after nearly two months, the defendants complain that they need an additional index for documents the Government does not intend to utilize in its case-in-chief. Notwithstanding any "usable index," the defendants will inevitably have to view the documents and determine which records, if any, will be useful in their case. Simply stated, the Government should not be compelled to do the defendants' work. More important, the defendants' motion fails to provide any specific factual or legal basis warranting the production of a detailed index in addition to what has already been provided. In light of the Government's efforts to assist defendants as set forth above, as well as the defendants' failure to establish the necessity of a "usable index," their request for a detailed disclosure of the contents of the boxes should be denied.

The defendants' next complaint is that the Government failed

4

to produce in discovery all Internal Revenue Service ("IRS") reports as well the agents' rough notes. (Defendants' Motion at 4). Although the defendants cite several narcotics cases, United States v. Bueno-Sierra, 99 F.3d 375, 380 (11th Cir. 1996) and United States v. Rodriquez, 799 F.2d 649 (11th Cir. 1986), neither one is on point. Furthermore, none of the cases cited by defendants compels the Government to produce any IRS reports or rough notes.

Reports and memoranda made by government agents in connection with the investigation or prosecution of the case are generally not discoverable under Rule 16.    United States v. Koskerides, 877 F.2d 1129, 1133-34 (2d Cir. 1989); United States v. Krilich, 470 F.2d 341, 351 (7th Cir. 1972).    In this case, the defendants' request for internal reports and rough notes fails to present any facts which tend to show that the Government is in possession of information material to their defense.    The defendants' general request for production of all of the agent's reports and rough notes in this case is simply insufficient to establish any entitlement to the requested documents.    Therefore, this request should be denied.

The Government would concede, however, that there are certain instances in which a case agent's report may be discoverable during a criminal case.    If a Government agent

testifies at trial and portions of his or her report relate to the subject matter of the testimony, then the Government may be required to produce such portions of the report under the Jencks Act.  United States v. Medel, 592 F.2d 1305, 1316 (5th Cir.), reh'g denied, 597 F.2d 772 (5th Cir. 1979); United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987).  The Government does not intend to call the case agent to testify at trial in this case.  As such, his reports, memoranda, and notes would not be discoverable under the Jencks Act.

## 2.  BILL OF PARTICULARS

The defendants request the Court to order a bill of particulars requiring the Government to disclose the method of proof it intends to use at trial to prove the indicted tax charges as well as a laundry list of other specific information about the charges in the indictment.  (See Section 2, Paragraphs 1 through 8 in the Argument section of defendants' Motion).

As background, the Court is vested with broad discretion in deciding whether a bill of particulars should be granted. United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985).  The Eleventh Circuit recognizes three purposes for a bill of particulars: 1) to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, 2) to minimize surprise at trial, and 3) to enable the

6

defendant to plead double jeopardy in the event of a later prosecution for the same offense. Id.

A bill of particulars is not intended as a tool for general discovery of the Government's case. United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981) (citation omitted). As such, the Government is not required to provide the defendants with a road map of its theory of the case or to provide the defendant with a detailed order of proof. "To allow the bill of particulars to serve as a wholesale discovery device would actually frustrate the federal discovery rule." United States v. Anderson, 799 F.2d 1438, 1442 (11th Cir.), reh'g denied, 805 F.2d 1043 (11th Cir. 1986), cert. denied sub nom. Tribune v. United States, 480 U.S. 931 (1987).

In deciding whether a bill of particulars is necessary and appropriate, the Court should consider not only the information contained in the indictment, but also the information already provided to the defendants through discovery. The defendants are not entitled to a bill of particulars with respect to information that is already available to them through other sources. United States v. Martell, 906 F.2d 555, 558 (11th Cir.), reh'g denied, 916 F.2d 719 (11th Cir. 1990).

With the foregoing as background, the Government will address the defendants' specific requests for information:

a.    Method of Proof

The Government previously informed the defendants
of the method of proof that it intends to use to prove the
indicted tax charges.  On September 27, 1999, long before this
case was indicted, the defendants' former attorneys, Ben Kuehne,
Esq. and Jon Sale, Esq., attended a conference at the Tax
Division in Washington, D.C.  During the conference, Messrs.
Kuehne and Sale were informed that the IRS used the specific
items method of proof to compute any tax loss in this case.  In
addition, they were provided the proposed criminal tax
computations based upon the information obtained during the
investigation as of that date.

b.    Defendants' Other Requests

The Government responds to the specific requests
numbered 1 through 8 on pages 8-9 of defendants' Motion as
follows:

Paragraphs 1 and 2: The indictment sufficiently describes
the manner and means the defendants used to impede and impair
the IRS.  As explained in the indictment, one of the ways they
did so was by skimming cash receipts from the corporation.  The
Overt Acts section of the indictment further explains this
conduct by alleging that the defendants diverted cash receipts
from their business to the office safe instead of depositing

8

them into the corporate bank account.  The defendants then each
took $500 per week in salary from the diverted cash in the safe.
The Government cannot be any more specific than what is already
alleged in the indictment with regard to the diversion of cash
receipts.

The defendants' request for the names of the individuals who
defendant Velez allegedly "directed to divert cash receipts" to
the office safe should be denied because it is merely a backdoor
attempt by them to obtain a list of the Government's witness
list in advance of trial.  The law does not grant the defendants
the right to obtain a list of Government witnesses simply by
couching their request in a motion for a bill of particulars.
United States v. Anderson, 799 F.2d at 1442.    "A criminal
defendant has no absolute right to a list of the Government's
witnesses in advance of trial."   United States v. Johnson, 713
F.2d 654, 659 (11th Cir. 1983), cert. denied, 465 U.S.  1030
(1984).  This Court is vested with broad discretion to deny such
a request and the exercise of that discretion is reversible only
for actual surprise.   United States v. Harrell, 737 F.2d 971,
976 (11th Cir.), reh'g denied, 745 F.2d 72 (11th Cir. 1984),
cert. denied, 470 U.S. 1027 (1985).

Given the facts of this case, there will be no surprise at
trial.    The defendants were present at the gym every day

9

supervising its operations.  As such, they know the names of the individuals who worked at the gym during the years in question, who handled the cash receipts of the business and who dealt with the books and records of the business.    Furthermore, the indictment already puts the defendants on notice of other individuals who played some role in the conspiracy, such as co-defendant, Joseph Salina.

Paragraphs 3 and 6: The false entry referred to in Count I, Paragraph 3G, is further explained in Paragraph 6 of the Overt Acts section of Count I.    That allegation is sufficiently detailed to provide the defendants with notice of the information requested.  The Government cites a specific date the entry was made, "February 4, 1994," the account the journal entry was recorded to, "Sales Income," and the amount of the entry, "$115,000."  Short of sitting down with defense counsel and physically pointing to the journal entry in the general ledger, a copy of which was furnished to them (Bates-stamp number 25202), the Government has fully apprised the defendants of this allegation.    As to the defendants' request for an explanation as to how the recorded false entry is "tied to the allegedly skimmed income," the Government is not required to explain how a particular piece of evidence fits into the overall theory of its case.    The indictment alleges various manners and

10

means of how the defendants accomplished the charged <u>Klein</u> conspiracy. The indictment more than adequately describes the various ways the defendants attempted to impede the IRS with respect to the income earned from their business operations at Back to Back Enterprises. The Government is not required to state further how those various manners and means may or may not be connected with each other in accomplishing the alleged <u>Klein</u> conspiracy.

Paragraph 5 and 7: There are fourteen transactions listed in Count I, Paragraph 4, of the Overt Acts section of the charged conspiracy relating to the exchange of checks by the defendants and other shareholders for the diverted cash. For each transaction the indictment lists a date, a check number and an amount. Each of these transactions is listed in the "Paid in Capital" account of Back to Back Enterprises' general ledger, a copy of which has been provided to the defendants. (Bates-stamp numbers 021280 - 021303; 25202). In addition, copies of the deposit items for each of these transactions was also provided to the defendants. (Bates-stamp numbers C03832-35; C03880-87; C04050-53; C04136-39; C04224-27; C05957-60; C06041-52). The information the defendants request about these items, <u>e.g</u>. who issued the checks and which account the check was issued from, has already been made available to defense counsel. They simply

11

have to look at the documents.  With regard to the defendants'
request as to how each check exchanged for the diverted cash
contributed to the alleged Klein conspiracy, the Government is
not required to give a preview of its closing argument of how
each piece of evidence fits into the Government's theory of the
case.   The indictment is sufficiently descriptive to put the
defendants on notice of the conduct charged therein and to allow
them to prepare an adequate defense.   Accordingly, the request
for that information should be denied.

     Paragraph 8: The defendants request that the Government
provide them with a total tax loss figure resulting from the
alleged tax crimes.   The Government intends to call a summary
witness to testify about the total amount of unreported income
based on the evidence that is admitted at trial.   The Government
will provide preliminary tax loss figures, which are subject to
change depending on what evidence ultimately is admitted at
trial, of the alleged unreported income, upon receipt from the
summary witness.

**3.   Discovery of Matters under Fed. R. Evid. 404(b), 501,
609(b) and 807**

     Fed.  R.  Evid.  404(b):  In  its  First  Supplemental
Response to the Court's Standing Discovery Order filed with the
Court on April 17, 2000, the Government informed each defendant
of the evidence it intends to offer as extrinsic evidence of

12

intent, or in the alternative, as proof of intent or a pattern of conduct under Fed. R. Evid. 404(b).

Fed. R. Evid. 501: The Government is unaware of any claim of common law privilege that applies to the evidence the Government intends to offer at trial.

Fed. R. Evid. 609(b): The Government does not intend to offer evidence of a conviction under Fed. R. Evid. 609(b) that is more than ten years old against either defendant.

Fed. R. Evid. 807: The Government does not intend to rely on the residual hearsay exception (Fed. R. Evid. 807) for any of the evidence it intends to offer at trial.

### CONCLUSION

Based upon the foregoing facts and argument, the Government respectfully requests that this Honorable Court deny the relief sought in Defendants Samuel Velez, Jr.'s and Anthony Garilli's Joint Omnibus Pretrial Motions.

Respectfully submitted,

THOMAS E. SCOTT
United States Attorney

By:    Beth M. Elfrey /gor

Beth M. Elfrey
Special Attorney
United States Department of Justice
Florida Bar No. 0964883

13

By:  *Gregory E. Tortella*

Gregory E. Tortella
Special Attorney
United States Department of Justice
Florida Bar No.: A5500373
P.O. Box 972
Washington, D.C. 20044
Telephone:  (202) 514-5145
Facsimile:  (202) 514-0960

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 18th day of May, 2000 to:

> Mark Nurik, Esq.
> Michael Popok, Esq.
> Ruden, McClosky, Smith, Schuster & Russell
> 200 E. Broward Boulevard, 15th Floor
> Fort Lauderdale, Florida 33301
>
> Bruce A. Zimet, Esq.
> One Financial Plaza, Suite 2612
> Fort Lauderdale, Florida 33394

*Gregory E. Tortella*

GREGORY E. TORTELLA
Special Attorney
U.S. Department of Justice

14