UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6049-CR-DIMITROULEAS

MAGISTRATE JUDGE: SNOW

UNITED STATES OF AMERICA,

Plaintiff

vs.

SAMUEL VELEZ, JR.,
ANTHONY GARILLI, and
JOSEPH SALINA,

Defendants.
______________________________/

**ANTHONY GARILLI'S SENTENCING MEMORANDUM**

Defendant, ANTHONY GARILLI, by and through undersigned counsel, hereby files this Sentencing Memorandum in order to provide information relevant to Garilli's forthcoming sentencing hearing.

**I.**

**INTRODUCTION**

The parties have agreed and the Presentence Report has concluded that the total offense level for Anthony Garilli is "11" (eleven). The Government has filed a Motion pursuant to §5K 1.1 Federal Sentencing Guidelines for a downward departure based upon Garilli's substantial assistance. Garilli has no objection to the Government's §5K 1.1 application which the Court has deferred until sentencing. Garilli has no objection to the Presentence Report. Certain clarifications of that report which do not constitute objections will be set forth herein. However, this pleading will primarily set forth information which Garilli submits should be of assistance in the Court's sentencing determination.





## II.

## THE OFFENSE

Garillli is only charged in three of the eight Counts in the Indictment. Garilli entered his guilty plea to Count I of the Indictment (conspiracy) with the other two counts to be dismissed at sentencing. The Presentence Report apparently utilizes "the offense conduct" prepared in the Salina Presentence Report. Certain modifications attempt to incorporated the Salina "offense conduct" into Garilli's case. In order to fully focus on Garilli's conduct the following factual presentation would appear appropriate. Garilli fully and completely accepts responsibility for his criminal conduct.

Garilli's involvement in the Indictment relates to two separate businesses which for purposes of this Memorandum will be referred to as "the Gold's Gym of West Palm Beach" and "the Gold's Gym of Fort Lauderdale". Garilli was partners with co-defendant, Valez in both gyms. In the West Palm Beach gym Valez owned 70% of the business while Garilli owned 30%. In the Fort Lauderdale gym, two other partners (unindicted co-defendants) were partners with Valez and Garilli.

The tax issues relating to Garilli arise from both the West Palm Beach and Fort Lauderdale gyms. When the West Palm Beach gym was sold, co-defendant, Valez, according to the Presentence Report, orchestrated with co-defendant Salina to increase the paid in capital of the gym in order to reduce the taxes owed on the sale of the gym. Garilli was not part of those conversations and in fact was told by co-defendant Valez that all the necessary taxes on the sale of the West Palm Beach gym had been paid. Garilli did not report the monies he had received from the sale of the gym based upon an incorrect belief that the taxes had in fact been paid and he was therefore not responsible for any additional taxes. In fact, the manipulations which had been orchestrated by co-defendant, Valez reduced the monies which Garilli received as well as

the monies which should have been paid in taxes to the Government. Nevertheless, as part of Garilli's restitution he has in fact agreed to pay back to the Government his proportionate share of the taxes which should have been paid upon the sale of the West Palm Beach gym.

The Fort Lauderdale gym offense commenced at a meeting in which co-defendant, Valez and one of the unindicted co-defendants expressed a desire to receive cash payments from the gym which would not be reported as income. The two co-defendants advocating cash payments were motivated by the fact that they were on pensions and did not want to report additional income. Garilli initially opposed the plan, however he later concurred. Garilli incorrectly rationalized that the co-defendants decision not to report their income was their decision and would not effect him in any way. However, the monies paid as cash payments were not only not reported on the co-defendants' tax returns, they were not properly included within the corporate tax returns of the Fort Lauderdale gym. Garilli of course bares responsibility for this non-reporting and has agreed to pay his portion of the un-reported taxes. Of significance to this case is the fact that Garilli did report the cash payments he received from the Fort Lauderdale gym. However, Garilli calculated deductions from the gross amount he received in 1993 and therefore inaccurately reported the total payments that he had received. Additionally Garilli did not include monies that he had received for certain additional work he had performed at the gym. In 1994, Garilli accurately reported all of the cash payments which he had received from the gym. Garilli was not part of the additional skimming of funds which were set forth in the P.S.I. Garilli's personal 1994 return is inaccurate since it does not include Garilli's proportionate share of the monies received by the gym.

**III.**

**AMENDED TAX RETURNS**

The presentence report correctly states that Garilli is responsible for a total tax loss of

$49,498.00. Garilli and his accountant have met with Internal Revenue Service, Special Agent, Mark Dunkel and have agreed upon the figures which will be presented in Garilli's amended tax returns for 1993 and 1994. Those returns will be filed prior to the time of sentencing in this case. Additionally, Garilli has agreed to the amended corporate tax returns which must be filed in this case. Those returns must be filed with the concurrence of the co-defendants. Garilli does not anticipate any difficulty in the amended corporate returns being filed. The amounts of penalties and interest will be calculated by the I.R.S.

## IV.

## GARILLI'S FINANCIAL STATUS

Three factors not fully set forth in the Presentence Report should be described relating to Garilli's financial status and "ability to pay". Initially, the Presentence Report includes Mr. Garilli's girlfriend's income of $1,072.00 per month. However, this income per month was not offset by the expenses which Mr. Garilli's girlfriend has per month. Documentation of those expenses can be presented to the Court however those expenses offset any real significance of the girlfriend's income. Additionally, the girlfriend's income should not be considered a factor in Mr. Garilli's ability to pay to the Government.

An additional expense was not included on Mr. Garilli's P.S.I. That additional expense of $4,500.00 to Ikon Office Solutions relates to his share of copying costs in the instant case.

Finally, upon meeting with the Internal Revenue Service it is clear that the amounts of money owed by Garilli to the I.R.S. is $49,498.00 in owed taxes. However, Mr. Garilli will be required to pay both penalties and interest on the $49,498.00. The Internal Revenue Service, Special Agent was unable to specify the amount of interest and penalties which will be required. Given the facts of this case, it is not unreasonable to prognosticate that those amounts will at minimum approximate $25,000.00. Accordingly, any calculation of Mr. Garilli's financial status

should include an I.R.S. obligation approximating $75,000.00. Mr. Garilli's unsecured debts therefore should approach $90,000.00 (including the additional $4,500.00 printing cost).

## V.

## GARILLI'S CHARACTER

Garilli has submitted with this Memorandum letters prepared by persons who have knowledge of Mr. Garilli. While many of the letters contain the boiler plate praises one would expect, the letters for Mr. Garilli provide a particularly vivid insight into Mr. Garilli's character. In particular, undersigned counsel would note the letters from Sergeant Major, K. W. Strickland, of the United States Marine Corps, Mr. Garilli's son, Anthony Garilli, Jr. as well as a letter from Lyndia Vega-Risso. Ultimately, the letters speak for themselves and do not require comment.

## VI.

## CONCLUSION

Garilli respectfully submits that he has fully and completely cooperated with the Government in this case. He has accepted his responsibility and admitted his guilt. Given the nature of the offense and its circumstances including the Governments' 5K.1 application, Garilli respectfully submits that a probationary sentencing is appropriate.

Respectfully submitted,

BRUCE A. ZIMET, P.A.
One Financial Plaza, Suite 2612
Fort Lauderdale, Florida 33394
(954) 764-7081 (Fort Lauderdale)
(305) 948-3648 (Miami)
(954) 760-4421 (Fax)

BY:______________________
BRUCE A. ZIMET, ESQ.
Florida Bar No. 225053

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing memorandum was delivered this 14th day of September 2000 to: Theodore Doolittle, Special Attorney U.S. Department of Justice, Tax Division, Room 4744, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

BRUCE A. ZIMET, ESQ.

cr-06049-WPD Document 86 Entered on FLSD Docket 09/15/2000 P

**UNITED STATES MARINE CORPS**
MARINE MEDIUM HELICOPTER SQUADRON 264 (REIN)
26TH MARINE EXPEDITIONARY UNIT
U.S. MARINE CORPS FORCES, ATLANTIC, PSC BOX 21017
JACKSONVILLE, NORTH CAROLINA 28545-1017

1000
SgtMaj
1 Sep 00

Honorable William P. Dimitrouleas
United States District Court Judge
299 East Broward Boulevard
Fort Lauderdale, FL 33301

Via:

Mr. Bruce A. Zimet, P.A.
One Financial Plaza Suite 2612
Fort Lauderdale, FL 33394

*Subject: CHARACTER REFERENCE SUPPORT LETTER RE: USA VS ANTHONY GARILLI*
CASE NO.: 00-6049-CR-Dimitrouleas

My name is Kenneth W. Strickland and I was born on 5 September 1957 in Ozark, Alabama. Presently I am serving in the United States Marine Corps and retain the rank of Sergeant Major (E-9). Being in the Marine Corps for 25 years and having a top leadership position I consider myself a very good judge of character. I deal on a daily basis with many problems from some of our finest men and women.

On a personal note, I have been happily married for 19 years and I am blessed with two wonderful daughter's ages 18 and 16.

I first met Tony Garilli in Fort Lauderdale in 1996 at his gym. From the moment I met him I was impressed by his enthusiasm and respect that he demonstrated towards the military. He really went out of his way to accommodate me so I would be able to workout in his gym when other people were not interested. I had explained to other people that because of my assignment in the Marine Corps I would be out of the country every 7 to 10 days visiting embassies where my Marines were stationed and consistently there response to my request was "Sorry, we can't do anything for you". The moment I explained my situation to Tony he was very understanding and spoke about how his son was a Marine and how proud he was of him. How his son graduated Honor Man from Boot Camp and presently was a Sergeant serving in an occupational specialty which only very few Marines possessed, primarily because of the difficulty involved in obtaining a top-secret security clearance.

I started working out in his gym and every time Tony was there he always greeted and treated me with the utmost respect. Being a Marine, one thing we are taught is situational awareness. In the times I saw Tony he was always very helpful and professional with everyone he came in contact with.

Tony Garilli helped me when I was having a personal problem at a time when my wife and I were having marital problems and I was going through a very hard time mentally. He helped me understand that the problems stemmed from me and that I had a wonderful wife and a beautiful family and that I needed to understand what my wife was trying to tell me. He encouraged me to be patient and for me to try and understand that my wife was just going through changes and that she really loved me and that everything would be alright. Well, he was right because my wife and I are still happily married.

I have met numerous people in Fort Lauderdale and when I mention the name Tony Garilli most of them have some type of story where he has helped them in some way.

In 1998, I received orders to North Carolina. Because of the unquestionable loyalty Tony practices in his life daily (a trait absence in society today), Tony and I have continued to stay in touch with one another. In 1999 my wife was diagnosed with an immune disorder called dematomyositus which almost killed her. In a time of need again the good Samaritan and a true friend Tony Garilli was there for me and my family. He would always call and give me the moral support I needed.

When I think of one with great character I think of Tony Garilli. When I think of one who has never forgotten where he came from I think of Tony Garilli. When I think of one who is willing to sacrifice himself for others, I think of Tony Garilli. Accolades will come and go, but the greatest compliment I have ever paid anyone was when I told Tony Garilli that he should have been a Marine. That is in fact the greatest compliment one could ever receive.

Sincerely;

K. W. STRICKLAND
Sergeant Major
U. S. Marine Corps



26th Marine Expeditionary Unit (SOC)
Command Element
Unit 74070
FPO AE 09511-4070
Fax UnSecure: 757 836 0984 (DSN 836)
Fax Secure:757 836 0984 (DSN 836)

To: ...ce A. Zimet Fax: 1-954-760-4421

From: SgtMaj Kenneth Strickland Date: 000901

Re: Pages: 4

CC:

☒ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ASAP

Notes:

September 8, 2000

Honorable William P. Dimitrouleas
United States District Court Judge
299 East Broward Boulevard
Fort Lauderdale, FL 33301

To the Honorable William P. Dimitrouleas:

My name is Anthony J. Garilli Jr. and I am writing to you today in the interest of my father and our family. I recently moved to Seattle, Washington with my wife Bianca after serving six years in the United States Marine Corps. My decision to enter into the service was against the wishes of the majority of my family. I was finishing my junior year at Oswego State University in New York and was only one year from earning a Baccalaureate in Marketing. My father was looking forward to my graduation, as the plan was to come down to Florida and join him in the fitness business. My Dad never had the chance to know his own father because he died of lymphatic cancer when my father was only an infant. Therefore, he was very emotional and excited about the proximity of fulfilling his lifelong dream of having his son by his side in the business world. Therefore, I can only imagine the sadness he must have felt in his heart when I phoned him to tell him that I had enlisted in the Corps and would not be joining him for at least another five years. However, Dad didn't even miss a beat. He expressed his concern about the dangers that Marines routinely face and then pledged his unconditional support for my decision and told me how proud of me he was in deciding to serve our country. I graduated bootcamp the honorman of my company of 478 Marines and was meritoriously promoted. Dad was out west on a business trip and could not attend my graduation. I ended up in the reconnaissance field and received a fair amount of special operations training throughout the years. A noteworthy experience that I will never forget came at my graduation from Ranger School. After spending roughly nine weeks in the woods and losing 38 pounds I was physically and emotionally drained. To my surprise, while standing in formation during the graduation ceremonies, my eyes filled with tears as I looked through the crowd, expecting only to see my wife, to see my father standing by her side. As it turned out, Dad had once again been out west attending a business meeting. However, this time, upon speaking with my wife and learning that I was graduating the following day, Dad told his associates that matters would have to wait for two days, and he flew from California to Georgia, arriving just in time to see me graduate.

Though I fell into the enormous percentage of American children whose parents divorced, I do not fall into the mix with those who did not have a father figure. My relationship with my father is one of mutual admiration and pride. I cannot put down into writing the words to describe how much I love this man. My mother and father divorced when I was very young and despite my mother's best efforts to keep my father and I from developing a relationship, she could not keep him out of my life. She constantly badgered him to allow her new husband, whom she later divorced, to adopt me. But, my father refused. She begged him to leave us alone so we could be a "family". Still, he would not relent. He constantly called, wrote, visited, and ensured that his son knew who his father was. At that young age, had he walked away, I would not have known what I was losing and would not be the man that I am today. He has always been there for me, every step of the way, throughout my life to lend me sound advice and give me the love that one can only get

from a father. He taught me to work hard and be the silent professional. That you don't need to be boastful or a braggart in your dealings with others. To let your actions and accomplishments speak for themselves and to approach even the most mundane jobs with the same alacrity as you would the most important ones. Dad used to tell me, "Son, even if your job is to shovel shit against the tide, well then, you make sure you're the best shoveler on the beach!"

I have lived long enough to learn that things do not always go according to the plan. In the Marine Corps we use the five-paragraph order to plan an operation. We go through great pains to ensure that we have covered all the potential scenarios and develop plans to deal with them. And yet, I cannot remember an operation that was carried out according to the plan. Things go wrong and mistakes are made, such is the reality of life. But, the ability to adapt and to overcome the mishaps is what separates success from failure. My father has taught me that the courageous man is not the one who goes into a fight knowing that he may get knocked down, but rather, he is the one who picks himself up after he's been knocked down and continues on. Dad has had his share of mishaps and mistakes, as we all have. However, he has always learned from them, made his best effort to right his wrongs, and taken the necessary measures to ensure that the same mistake would not be made twice. More importantly, he has always picked himself back up and moved on with enthusiasm.

My father is a caring, honest man whose love for helping others is evident in the very line of work he is in today. Helping to get people in shape is a wonderful job field because it changes lives. It is an education process that leaves folks feeling good about themselves. It boosts the self-esteem and gives people the pride of accomplishment. There is no greater joy than guiding a person through the process of setting their goals, and then realizing them through hard work and dedication. You can see the difference in the way they carry themselves, in their walk, and in their smile. This is what my father lives and stands for today. He builds fitness centers and he touches all who come into contact with him. On numerous occasions he has stressed to me the insignificance of money. He has taught me that money will come and go, but what is important is whether or not you've made a difference. At the end of our time here we want to look back on our lives and know we've made a positive influence on the world and left it in a better state than what we found it in. To do this there is a simple philosophy that I try to live by. At the end of each day, when we lay our heads to rest, we can ask ourselves if we produced more than we consumed today. If the answer is yes, then we know we are moving toward achieving that end. These are the things I've learned from my father.

Respectfully yours,

Anthony J. Garilli Jr.

September 5, 2000

Honorable William P. Dimitrouleas
United States District Court Judge
299 East Broward Boulevard
Fort Lauderdale, FL 33301

To the Honorable William P. Dimitrouleas,

Thank you for giving me the opportunity to speak out on behalf of my friend, Anthony Garilli. My name is Steven Robinson and though I have only been in Florida for a little over a year, my relationship with Tony extends for over 20 years. For the past 27 years I lived in South Lake Tahoe. There, I owned and operated a small chain of pizza and pasta restaurants for the better part of that time. After selling the restaurants, I decided to move to Florida on the advice of Tony and another friend, both of whom I met in Lake Tahoe.

Presently I am a marketing associate for Sysco Foods, South Florida. I am a single parent of a 13-year-old girl, a member of a local temple here in Boca, and active in my child's volleyball team fund raisers (Olympic Heights Volleyball).

I met Tony in Tahoe through a mutual friend; we became friends and eventually roommates in my house. Tony was always a man of his word, paid his share of expenses upon demand and became my lifelong friend in the interim.

Tony was continually working at least two jobs. He is a worker, one that gets things done and accomplishes what he sets out to do. I know he was a croupier (card-dealer/craps-dealer) in Harrah's Casino when we met; he installed carpets on the side, and then went on to work on a cruise ship in the same capacity. This led to becoming a pit boss, and eventually casino host at the Riviera Hotel in Vegas for awhile before returning to New York to start his own small construction company specializing in remodeling work. After a few years, I believe 1988 or so, Tony moved to Florida and got involved in the Fitness business in the West Palm area. I know he helped make that a successful business with his friend, Sam. After the sale of that business, he successfully planned, built, and developed an ongoing business (Gold's) despite the problems he encountered with some of the limited partners.

His tenacity for detail, satisfaction of completion, and his desire to accomplish are what he stands for. Tony is a worker, has always had a hands on approach to everything he does, thus a finished product that emulates pride and joy in whatever he undertakes.

Somehow, even good well-intended plans go array, trust, friendships, business dealings and people's ethics. Some mistakes can be corrected. Somehow Tony got caught up with some more devious, deceitful, and unscrupulous people. It's a hard lesson to learn though knowing Anthony as well as I do, I feel he is very remorseful, and any leniency toward probation would be more just concerning this matter.

In closing, Anthony made a mistake, he put his trust in others, and thus he has been paying for this nightmare for years, and having closure in this case will enable him to produce, enrich, and excite others in whatever endeavors he chooses to do in the future. He is a good, caring, sincere, smart, thoughtful, loving man, that given the chance will enrich all of our lives in knowing him.

Sincerely,

Steven Robinson

Steve Robinson

September 11, 2000
John J. & Bernice L. Queally
4220 S.W. 11th St.
Deerfield Bch, Fl. 33442

Honorable William P. Dimitrouleas
United States District Court Judge
299 East Broward Blvd.
Ft. Lauderdale, Fl. 33301

RE: Anthony Garilli
Character Reference

Your Honor:

My wife and I have been residents of South Florida since 1975. We relocated from New York where I had been the principal in two small businesses which I sold prior to relocating.

In 1976 my son & I opened a small athletic footwear store in Hollywood, Fl. Over the next five years we expanded this store & opened two additional stores in Margate & Boca Raton, Fl. I retired from this

business in 1994.

As to our relationship with Anthony, it goes back to when he was only a baby. My wife & his mother, Jeannette, have been friends since childhood & that friendship has remained strong for the last 60 years. Until we moved to Florida, we maintained a close relationship with Anthony & his family. We watched him & his sisters grow from infants to young adults.

We resumed our relationship with Anthony when he moved to South Florida. Although we only saw each other occasionally at first, we were kept aware of his accomplishments through telephone communication & occasional visits at his sister's house in Wellington. We were extremely happy for him when he was able to open his first gym in Palm Beach, & then later to build a "State of the Art" gym in Ft. Lauderdale. We know that he put his heart & soul into this new gym & worked

extremely hard to make it successful.

In 1995 Anthony offered me the position of General Manager at the Ft. Lauderdale gym. I gladly accepted the position for two reasons:
(1) I had already tired of being fully retired.
(2) I believed I could be helpful to him because of my business background.

It was in the five years that I held this position that I came to know Anthony as an adult, & to observe how he conducted himself with gym members, employees, & the many people that he came in contact with on a daily basis. On numerous occasions I witnessed him extending himself to advise & assist individuals with personal or financial problems. In many instances he was quite generous in assisting those in need.

As far as Anthony's relationship (family) I can honestly say that I have rarely

seen a more devoted father to son, son to mother & brother to his three sisters. Although we are not blood relatives, Anthony has always treated us as family members & shown us the utmost respect & love.

It is our opinion that it would serve no worthwhile purpose to incarcerate Anthony for any period of time. I believe that his only crime was that he placed too much trust in the people he was associated with, & relied on their judgement in areas of business he was not familiar with. I am equally certain that nothing like this will ever happen again in any business ventures that he may become involved in.

I would like to thank you for taking the time to read & evaluate

this letter, I can only hope that you will see fit to accept the recommendation of Anthony's family & many friends.

Sincerely yours,

John L. Jerealty
Bernice L. Juealty

September 7, 2000

Honorable William P. Dimitrouleas
United States District Court Judge
299 East Broward Blvd.
Fort Lauderdale, FL 33301

Dear Honorable William P. Dimitrouleas,

My name is Lisa Reynolds, I am Anthony Garilli's fiancee. I have known Anthony for approximately six years. Out of the six I have known him, three we have been in a relationship. I am employed by Allstate Insurance Company for twenty two years as a Staff Claim Representative.

When I first met Anthony six years ago I was a member of his gym, Gold's Gym of Fort Lauderdale. Anthony always kept a clean, and well organized place of business. He always listened to any member's or employee's concerns and addressed each one of them. Anthony always ran charity events either on the gym premises or off the premises for Kids in Distress, March of Dimes, Silver Sneakers, and many others. Anthony would always help out a friend, family member, or employee that was having troubles either financially or even just needed someone to talk with.

I must say that whatever endeavor Anthony meets he entirely puts his heart and soul in it and works very hard. This could be physical labor or long hours. Whatever it takes to get the job done and the job completely to one hundred percent perfection. He always takes such pride in his work product.

Anthony is also very responsible whether it is to make his child support payments or to even send extra if it is the beginning of the school year and clothing or other necessities need to be purchased or to pay his bills. He is a good father, leader, and always helps his family. He sends his sister any money whenever he can to assist her with her four teenagers.

I just wanted to give you an example of what occurred the other day when I was with him in the parking lot of Walmart. There was an African American woman by herself with her car hood up. Many men and women walked right by her but Anthony stopped without even thinking about if for a second and walked right over to her and worked on her car and finally got her car started. It is hard in times like today to find special people who would take the time to help others.

I hope I was able to give you a small picture of what Anthony is all about and thank you for giving me this opportunity to speak about him.

Sincerely,

Lisa Reynolds

September 7, 2000

Bruce A. Zimet, P. A.
One Financial Plaza
Suite 2612
Ft. Lauderdale, Fl 33394

Honorable William P. Dimitrouleas
United States District Court Judge
299 East Broward Boulevard
Fort Lauderdale, Fl 33301

Re: Case #: 00-6049 CR Dimitrouleas

My name is Eileen Valenti, I am the working mother of two (2) sons Philip aged 7 years and Blake aged 10 months old.

I completed The New York College and have an Associates Degree in Occupational Science. I am now a practicing, licensed Massage Therapist.

Anthony Garilli is my older brother, we are thirteen years apart. All though there is a very big age difference we have always been very close. As my older brother, he has filled that role to the fullest. He has been there through out my life in good times and in bad, even though we live far apart he shares in my childrens lives and our family.

My brother has had so many accomplshments in his life it would be difficult to put them all on paper. However I feel his biggest accomplishment has been the upbringing of his son who is now 27 years old. He has raised a child into a young man with high honors

in the United States Marine Corp. Raising a child to be proud of is the best accomplishment.

My brother is always ready to lend a hand anytime we ask him for help. My nephew Dominic had the opportunity to go to Paris on a class trip but could not afford the expensive plane fare. My brother sent him the money no questions asked and he was able to have a lifetime memory. These are just small examples of a brothers love for his family.

My brother has build businesses from scratch for the last twenty years. He has always been a hard worker and dedicated to any job he ever took on.

As his baby sister I could only talk highly about my brother to anyone who askes. I love my brother because he's my brother, I like and respect him because he's Anthony Garilli.

Thank you for taking the time to read my thoughts and feelings about Anthony.

Sincerely,

Eileen M. Valent, L.M.T.

September 1, 2000

To: Honorable William P. Dimitrouleas
United States District Court Judge
299 East Broward Boulevard
Fort Lauderdale, Florida 33301

Re: Anthony Garilli

I am a forty-six year old native New Yorker who has lived in South Florida for close to thirty years. I am married, have a teenage son and have worked for BellSouth Telecommunications for the past twenty-eight years.

I had the pleasure of meeting Anthony Garilli in 1992. I was having construction work done in my home and ran into problems with the contractor. While discussing my dilemma with a dear departed cousin, Mr. Harry Risso, who resided in NY, he suggested that I contact Anthony Garilli. He explained that Anthony Garilli was like a son to him, was very knowledgeable with construction work, and would be more than happy to help me mediate my problem with the contractor. I phoned Mr. Garilli and being the type of individual that he is, he drove to my home that very same evening and together we discussed the problem I was having. The next day, Mr. Garilli made an appointment with my contractor and quickly resolved my problem. I will never forget how he helped me in that situation.

Since then I have often heard his name spoken by my family members in NY with love. He has shown great dedication to my cousin. When my cousin became ill and was hospitalized, Mr. Garilli made it a point to fly to NY to lift his spirits and truly showed that he cared.

He also makes it a point to help in whatever is needed for my son's school band projects. My son is also involved in Drum Corp's (a non-profit organization for youth) and Mr. Garilli quickly and gladly contributed when asked.

Lastly, I wish to add that Anthony Garilli has other personality traits that I value most in individuals. He is loyal to his family and friends, he is honest and sincere, and has a terrific sense of humor and a desire to make the best out of life. He is a valued friend and an asset to society.

Sincerely,

Sueann C. Torres

Sueann C. Torres

*August 31,2000*

*To: The Honorable William P. Dimitrouleas*
*United States District Court Judge*
*299 East Broward Boulevard*
*Fort Lauderdale,Fl 33394*

*Dear Judge Dimitrouleas*

*I am writing to you today, on behalf of my brother Anthony Garilli. As children Anthony and I grew up in Brooklyn and moved to Long Island in our early teens. we were close as kids and having a Big Brother was great, he was very protective of his sisters. Anthony was very ambitious, well liked and successful in everything he did.*

*Anthony has accomplished many things in his lifetime, from business to being a good father,he is a loving son,brother and uncle to my children. After losing my 19 year old son 3 years ago in an automobile accident, it was comforting to my husband and I and our daughter Maggie to have my brother's compassion and support at such a trying time.*

*. As a close family we get together as often as possible, even though we live a distance,. we see one another several times a year.*

*Thank you your Honor for taking time from your schedule to read this letter.*

*.*

*Respectfully Yours,*
*C Jones*
*Catherine Jones.*

FORD
POPULAR FORD SALES, Inc.

2505 Coney Island Avenue Phone 718-376-5600
NYC • C/A LICENSE NO 769497
BROOKLYN, NEW YORK 11223
Fax 716-375-6196
E-Mail: populrford@aol.com

September 6, 2000

To: Honorable William P. Dimitrouleas
United States District Court Judge
299 East Broward Boulevard
Fort Lauderdale, Florida 33301

Re: *Anthony Garilli*

I would like to take this opportunity to introduce myself. My name is Lydia Vega Risso My husband Harry Risso and I have known Mr Garilli for fifteen years. My husband was the dealer principle of Popular Ford, a family owned business.

Throughout that time, We have developed a close and personal relationship with Mr Garilli. My husband regarded him as a son.

When my husband was hospitalized in Dec,1999 Mr Garilli gave up spending Christmas with his family to be with my husband and I on Christmas day in the hospital. This kind of act has again shown me his kind and gentle nature

Since the death of my husband, I am now residing in Florida. Mr Garilli has helped make my transition easier. His compassion does not surprise me because he has always shown his unselfishness in time of need.

Not only has Mr Garilli demonstrated his devotion towards my self and my husband, he has dedicated himself to those less fortunate.

Sincerely,
Lydia Vega-Risso
Lydia Vega-Risso

September 1, 2000

Honorable William P. Dimitrouleas
United States District Court Judge
299 East Broward Boulevard
Fort Lauderdale, FL 33301

Dear Honorable Judge Dimitrouleas:

My name is Dan Porsi. I am married to Jeannette Porsi, Anthony Garilli's mother.

I have known Anthony for the last 29 years. Even though Anthony was out on his own a few years after I married his Mom, I could see his ambition and his determination. He always worked hard, sometimes holding down 2 jobs at a time.

He did some traveling in his younger days and always made sure to keep in touch with his family on a regular basis.

Anthony was a good boy growing up and never caused any problems. He did well in school and was involved in sports and extra curricular activities.

He is a fine man, devoted to his son and his family and loved by everyone.

I appreciate your taking the time Your Honer to read this letter on behalf of Anthony.

Sincerely,

Dan Porsi

September 1, 2000

Honorable William P. Dimitrouleas
United States District Court Judge
299 East Broward Boulevard
Fort Lauderdale, FL 33301

Dear Honorable Judge Dimitrouleas:

My name is Jeannette Porsi and I am writing to you on behalf of my son, Anthony Garilli.

Since Anthony was a young man he has always been very ambitious. He sets his goals and works very hard to achieve them. He was a good student and well liked by his peers. He has never been in trouble with the law and I can honestly say Your Honor, Anthony has never given me one day of grief. He is compassionate and a wonderful son.

He has a close relationship with his three sisters and their families and family get togethers are very meaningful and important to him. We do not live close to each other but Anthony always makes the effort to make sure that we meet several times a year.

He has a wonderful son, Anthony Jr. and is so proud of the man he grew up to be. They spend as much quality time together as possible.

When Anthony's grandmother was very ill and living in New York with me he would put everything aside and fly up here to be with her. He knew how happy it made her to see him and what a comfort he was to her.

Your Honor, I thank you for taking the time from your busy schedule to read this letter regarding my son.

Sincerely yours,

Jeannette Porsi

Jeannette Porsi